MR. JUSTICE SHEA,
dissenting:
I join in the dissent of Justice Morrison. Because of time exigencies, I am unable to write a more detailed dissent at this time, other than what I state below. Time permitting, I will add a more detailed statement of why I dissent.
The situation is that MPC has been permitted, without a showing of need or of alternatives, to expand the power available to Big Sky from a 69 KV line to a 161 KV line, in a situation where even in the untested application, the MPC has projected that Big Sky will need only 39 KV.
The current 69 KV line to Big Sky has a capacity of 9 megawatts. With modification, this line could be increased to a maximum capacity of 12-15 megawatts. The application of the MPC, accepted without question by the agency responsible for the environmental impact study (the DNRC), projects a need at Big Sky of 30 megawatts. This 30 megawatt projection was not substantiated by the MPC application, nor did the environmental impact study make any attempt to justify the load growth projection to 30 megawatts. Yet the MPC application is for a 161 KV line — which has a carrying capacity of 200 megawatts, or almost five times the projected load growth stated in the application.
As stated by Justice Morrison, all but 5 megawatts could, as disclosed in the hearing, be met through application of conservation alternatives which do not require additional electrical services. How, then, can the environmental impact statement be sufficient when it fails to address the need ánd the existing alternatives to the projected energy *56 demand of Big Sky? It was error, as Justice Morrison points out, for the District Court to hold that the environmental impact statement could be given life by instead looking to the “Board’s decision on the entire record,” including the deficient environmental impact statement. Justice Morrison correctly concludes, on the other hand, that the environmental impact statement must stand on its own, and here it cannot stand.
Nor can I understand the total failure of the DNRC to demand from MPC, that it comply with the information required to be in an application for a permit. Here the DNRC admitted that the MPC application was deficient, and that it did nothing to make the application sufficient. Rather, the DNRC proceeded with the environmental impact study without ever obtaining and evaluating either the need for the 161 KV line or the alternatives to supplying power for the projected needs of Big Sky.
The fault in not making an adequate application can be laid directly at the doorsteps of the MPC. But the DNRC should not have started its environmental impact study until it had a complete or substantially complete application. Furthermore, if the study was started without noticing this rather glaring omission, once noticed, it was the duty of the DNRC to notify the MPC to complete its application and to further notify the MPC that the study could not be finished until the application was complete and the DNRC had evaluated the additional information provided in the application. Here that was not done. Rather, the DNRC proceeded with the study without ever compelling the MPC to comply with the clear directives of the Montana Environmental Protection Act as to alternatives (section 75-1-201(3), MCA) and need (section 75-20-102(1), MCA). The DNRC can hardly be said to have been protecting the constitutional rights of Montana citizens to a clean and healthy environment when it máde its impact study without directing the MPC to comply, and without itself complying with these statutes. Nor did the District Court or this Court *57 fulfill its duty by approving an environmental impact statement so glaringly deficient.